**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MICHAEL WHITNEY,

      Plaintiff,

v.                                          No. CV 19-566 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** is before the Court on Plaintiff Michael Whitney's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 24), filed January 3, 2020; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 28), filed March 16, 2020; and Mr. Whitney's *Reply in Support of Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (the "Reply"), (Doc. 31), filed April 15, 2020.

Mr. Whitney filed applications for disability insurance benefits and supplemental security income on February 29, 2012, alleging disability beginning September 1, 2011. (Administrative Record "AR" 83-84, 197, 199). In his applications, Mr. Whitney claimed he was limited in his ability to work due to femoral acetabular impingement in both hips, a head tremor, and arthritis in his right shoulder. (AR 237). Mr. Whitney's applications were denied initially on May 3, 2012, and upon reconsideration on April 25, 2013. (AR 81, 112). Shortly thereafter, Mr. Whitney requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 27, 2014. (AR 33).

At the hearing, Mr. Whitney appeared before ALJ Ann Farris with his attorney Michael Armstrong and impartial Vocational Expert ("VE") Nicole King. (AR 33). ALJ Farris issued a partially favorable decision on October 21, 2014, finding Mr. Whitney disabled beginning November 4, 2013. (AR 27). However, ALJ Farris concluded that prior to November 4, 2013, Mr. Whitney was not disabled. (AR 25). Mr. Whitney requested review by the Appeals Council, which was denied, making ALJ Farris's partially favorable decision the Commissioner's final decision for purposes of judicial review. (AR 1, 6).

On April 26, 2016, Mr. Whitney filed a Complaint before the United States District Court for the District of New Mexico, alleging ALJ Farris committed legal errors and her decision was not supported by substantial evidence. (AR 758, 764). The Honorable Steven Yarbrough agreed with Mr. Whitney and found ALJ Farris committed legal error in failing to properly evaluate the medical opinion of Mr. Whitney's treating psychiatrist, Robert Knight, M.D. (AR 764). As a result, Judge Yarbrough remanded Mr. Whitney's case to the Commissioner for further proceedings. (AR 772).

On remand, the Appeals Council ordered a rehearing on Mr. Whitney's claim of disability for September 1, 2011, through November 4, 2013. (AR 673). At the second hearing with ALJ Farris, Mr. Whitney appeared with his attorney, Laura Johnson, and VE Mary D. Weber. (AR 695). On April 18, 2019, ALJ Farris determined Mr. Whitney was not disabled between September 1, 2011, through November 4, 2013. (AR 687). After ALJ Farris issued her decision, Mr. Whitney directly petitioned this Court, and thus, ALJ's Farris's decision became the operative decision for review by this Court. *See* 20 C.F.R. § 404.984(a) ("[W]hen a case is remanded by a Federal court for further

consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand....").

Mr. Whitney, represented by his attorney Katherine O'Neal, now argues in his Motion that ALJ Farris made two reversible errors in rejecting his disability claim: (1) his Residual Functional Capacity ("RFC") did not include a "function-by-function assessment of Mr. Whitney's work-related abilities," as required by the regulations; and (2) ALJ Farris "breached her duty to develop the record with respect to Mr. Whitney's abilities to interact with supervisors and reach." (Doc. 24 at 14-23). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the ALJ did not commit reversible error, the Court **DENIES** Mr. Whitney's Motion and the case is **DISMISSED WITH PREJUDICE**.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey*

*v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. At step five, the Commissioner bears the burden of showing that the claimant can perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.  Background

In his applications, Mr. Whitney alleged limitations in his ability to work due to femoral acetabular impingement in both hips, a head tremor, and arthritis in his right shoulder. (AR 237). At step one, the ALJ determined Mr. Whitney had not engaged in substantial gainful activity since September 1, 2011, the alleged disability onset date.

(AR 676). At step two, the ALJ found Mr. Whitney had the severe impairments of bilateral hip acetabular impingement syndrome, degenerative disc disease of the lumbar spine, depression, and anxiety. (AR 676).

At step three, the ALJ determined Mr. Whitney's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. (AR 677). The ALJ then found Mr. Whitney had the RFC to perform "less than a full range of light work" with the following additional limitations: he had to alternate between sitting and standing approximately every thirty minutes; he could not kneel, crouch, or crawl; he could make simple work-related decisions, with few workplace changes; and he could have only occasional, superficial interactions with the public. (AR 678).

In formulating Mr. Whitney's RFC, the ALJ stated that she considered Mr. Whitney's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical and other evidence, as required by 20 C.F.R. §§ 404.1529, 416.929, and Social Security Ruling ("SSR") 16-3p. (AR 678-79). In addition, the ALJ stated that she considered opinion evidence consistent with the requirements of 20 C.F.R. §§ 404.1527 and 416.927. (AR 679). The ALJ concluded that while some of Mr. Whitney's impairments could be expected to cause his alleged symptoms, the intensity, persistence, and limiting effects Mr. Whitney described were not entirely consistent with the evidence in the record. (AR 680).

Turning to the opinion evidence, the ALJ assigned "little weight" to the opinions of Jeremy Becker, M.D., Mr. Whitney's treating orthopedist, and Dr. Knight, Mr. Whitney's treating psychiatrist. (AR 681-84). However, the ALJ gave "some weight" to the opinions

of state agency medical consultants Bonnie Lammers, M.D., Leah Holly, D.O., and Elizabeth Chiang, M.D. (AR 684). Lastly, the ALJ gave "little weight" to statements submitted by Mr. Whitney's girlfriend, Dena Rossi, and his long-time friend, Mary Thornton. (AR 685).

At step four, the ALJ found that Mr. Whitney was unable to perform his past relevant work as a tour guide or construction worker. (AR 685). The ALJ then moved to step five, noting that Mr. Whitney was 52 years old on the alleged disability onset date and therefore under the regulations classified as an individual closely approaching advanced age. (AR 685). At this step, the ALJ also determined that Mr. Whitney had at least a high school education and could communicate in English. (AR 685).

Next, the ALJ explained that if Mr. Whitney had the RFC to perform the full range of light work, a finding of not disabled would be directed by the regulations. (AR 686). However, the ALJ found that Mr. Whitney's non-exertional limitations impeded his ability to perform the full range of light work. (AR 686). Therefore, the ALJ relied on the VE's testimony to identify other jobs Mr. Whitney could perform in the national economy. (AR 686). The ALJ noted that the VE testified that an individual with Mr. Whitney's same age, education, work experience, and RFC could perform the jobs of office helper, silver wrapper, and warehouse checker. (AR 686). After finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony, and she concluded that because Mr. Whitney could perform work existing in significant numbers in the national economy, he was not disabled pursuant to 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 686-87).

IV.    Analysis

Mr. Whitney presents two arguments in his Motion before the Court. (Doc. 24). First, Mr. Whitney contends the ALJ's RFC failed to include a "function-by-function assessment" of his work-related abilities, as required by SSR 96-8p. *Id.* at 14. Specifically, Mr. Whitney alleges the ALJ failed to consider his abilities to interact with supervisors and reach. *Id.* at 15-17. Second, Mr. Whitney argues the ALJ violated her duty to develop the record by denying Mr. Whitney's request for psychological and physical consultative examinations. *Id.* at 20.

In opposing Mr. Whitney's request for remand, the Commissioner contends the ALJ considered Mr. Whitney's abilities to interact with supervisors and reach, and properly discounted medical source opinions that included these limitations. (Doc. 28 at 10-14). Next, the Commissioner explains the ALJ reasonably considered and denied Mr. Whitney's requests for consultative examinations, as she had "broad latitude" to deny such requests. *Id.* at 14. As a result, the Commissioner argues the ALJ did not commit reversible error in her decision, and therefore, her decision should be affirmed. *Id.* at 28.

### A.  The ALJ's Function-by-Function Assessment

Mr. Whitney first asserts the ALJ failed to include a function-by-function assessment of his abilities to interact with supervisors and reach as required by SSR 96-8p. (Doc. 24 at 14). Social Security Ruling 96-8p explains that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3. The function-by-function assessment requires that "[a]t step 4 of the

sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work…." *Id.* This is because "it may not be possible to determine whether the individual is able to do past relevant work [because] particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level." *Id.*

With respect to non-exertional limitations, the SSR defines these as "restrictions that do not depend on an individual's physical strength." *Id.* at *6. These non-exertional abilities include the following:

> "[A]n individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)…[and] the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

*Id.* "As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions." *Id.* Thus, when considering nonexertional mental limitations a function-by-function assessment generally requires considering a claimant's ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." *Id.*

While SSR 96-8p requires strict adherence to function-by-function terminology in the RFC finding, in *Hendron v. Colvin* the Tenth Circuit held that deviations from this formulaic terminology are harmless provided the ALJ address any pertinent limitations and the decision is otherwise supported by substantial evidence. 767 F.3d 951, 954-57 (10th Cir. 2014) (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

The concern underlying SSR 96-8p "is that, without a function-by-function analysis, an ALJ 'may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.'" *Hendron*, 767 F.3d at 956 (citing SSR 96-8p, 1996 WL 374184, at *4).

As a result, the Tenth Circuit has found an ALJ to have fulfilled her obligations under SSR 96-8p when it is clear from the written decision that she has considered evidence of a claimant's limitations and adequately explained how the evidence in the record supports her RFC finding. *See Patterson v. Colvin*, 662 F. App'x 634, 639 (10th Cir. 2016) (unpublished) ("[A]n explicit function-by-function evaluation was not required because the ALJ considered the work restrictions necessary to accommodate [the claimant's] mental limitations.").

           i.    *The Ability to Interact with Supervisors*

Mr. Whitney first alleges the ALJ "did not consider [his] ability to interact with supervisors." *Id.* at 15. In support of this argument, Mr. Whitney points to the ALJ discounting opinions from Dr. Chiang and Dr. Knight, both of who opined Mr. Whitney had moderate to marked limitations in working with supervisors. *Id.* at 15-16. Mr. Whitney also alleges the ALJ ignored evidence from his function report, treatment records, and his hearing testimony. *Id.* at 16. Lastly, Mr. Whitney contends the ALJ erred when she found a moderate limitation in social functioning at step three of the SEP, supported this finding by noting Mr. Whitney's alleged difficulty with authority, and then failed to include any coworker or supervisor limitations in the RFC assessment. *Id.*

                a.  *The ALJ's Analysis of Dr. Knight & Dr. Chiang's Opinions Under SSR 96-8p*

In support of his assertion that the ALJ did not consider his ability to interact with

supervisors, Mr. Whitney first contends the ALJ erred in discounting the opinions of Dr. Knight and Dr. Chiang. *Id.* at 15-16. Specifically, Mr. Whitney argues both Dr. Knight and Dr. Chiang opined he suffered from moderate to marked limitations in working with supervisors. *Id.* In response, the Commissioner argues this restriction was considered but rejected when the ALJ gave great weight to Dr. Chiang's narrative opinion. (Doc. 28 at 10). Specifically, in her narrative opinion, Dr. Chiang opined Mr. Whitney was "able to interact adequately with coworkers and supervisors." *Id.* As such, the Commissioner contends the ALJ's consideration of Dr. Knight and Dr. Chiang's opinions under the framework of SSR 96-8p is sufficient to withstand judicial review. *Id.*

Pursuant to SSR 96-8p, the RFC narrative requires the ALJ to "explain how any material inconsistencies or ambiguities…were considered and resolved" and for the ALJ to "consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Id.* The central purpose of requiring the ALJ to discuss contradictory medical evidence serves to ensure the ALJ does not "overlook" limitations that would otherwise render the claimant disabled. *Hendron*, 767 F.3d at 956 (citing SSR 96-8p, 1996 WL 374184, at *4).

Here, in discussing the medical evidence the ALJ summarized Mr. Whitney's psychiatric appointments in which he complained of depression and irritability. (AR 682-83). The ALJ also noted examinations where Mr. Whitney appeared depressed, with poor sleep and anxiety. (AR 682-83). The ALJ noted that during these examinations, Mr. Whitney was cooperative, pleasant with good eye contact, and had intact memory and adequate concentration. (AR 682-83).

11

Furthermore, in her analysis of Dr. Knight's opinion, the ALJ considered Mr. Whitney's social functioning abilities. (AR 684). Dr. Knight opined Mr. Whitney had marked limitations in a variety of social tasks. (AR 683). After evaluating Dr. Knight's prescribed limitations, the ALJ found they were inconsistent with Mr. Whitney's stated social activities, including his 2014 testimony that he went shopping, attended church, and was able to maintain a relationship with Ms. Rossi. (AR 683-84). In addition, the ALJ gave great weight to Dr. Chiang's opinion that Mr. Whitney could interact adequately with supervisors and coworkers. (AR 684). After accounting for Mr. Whitney's "allegations and evidence of treatment for anxiety and depression," the ALJ found that a limitation to occasional, superficial interaction with the public was more aptly supported. (AR 684).

In conclusion, under the framework and requirements of SSR 96-8p the ALJ considered Dr. Knight's opinion and provided legitimate reasons for rejecting it. Furthermore, the ALJ considered Dr. Chiang's opinion, and after weighing it against competing evidence, she provided valid reasons for accepting it in part.  As such, the ALJ's analysis of Dr. Chiang and Dr. Knight's opinions survives judicial scrutiny under SSR 96-8p.

> b. *The ALJ's analysis of Mr. Whitney's Function Reports, Treatment Records, and Hearing Testimony pursuant to SSR 96-8p*

Next, Mr. Whitney alleges the ALJ ignored evidence from his function report, treatment records, and his hearing testimony in assessing his limitation in interacting with supervisors. (Doc. 24 at 16). In response, the Commissioner asserts the ALJ adequately discussed this evidence and weighed it against competing evidence in the

record. (Doc. 28 at 11). The Commissioner therefore contends the ALJ appropriately contemplated Mr. Whitney's function report, treatment records, and hearing testimony, before crafting her RFC assessment. *Id.*

In order to support this function-by-function assessment, the RFC narrative section compels a "discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. The ALJ must demonstrate in her written decision that she considered evidence of a claimant's limitations, including the nonmedical evidence, and adequately explained how the evidence supports her RFC assessment. *See Patterson*, 662 F. App'x at 639 (unpublished). As such, the ALJ may reject a claimant's nonmedical evidence, such as his daily activities, so long as her rejection is adequately supported and explained in the decision. *Id.*

Here, in discussing Mr. Whitney's social limitations, the ALJ cited to Mr. Whitney's reports of difficulty getting along with others, specifically those in authority, and to Ms. Rossi's statement that he was prone to angry outbursts. (AR 678). The ALJ weighed these findings against Mr. Whitney's ability to use public transportation and testimony from his 2014 hearing that he regularly went shopping and attended church. (AR 678). The ALJ noted that despite his angry outbursts, Mr. Whitney was able to cohabitate and maintain a relationship with his girlfriend, and he worked as a pedal-cab tour guide, which involved interaction with customers on a regular basis. (AR 678).

In the RFC narrative analysis, the ALJ outlined Mr. Whitney's symptoms, such as his preference to avoid others, specifically authority figures, and recited his complaints

13

of anxiety, depression, and auditory hallucinations. (AR 679). Next, the ALJ described

Mr. Whitney's daily activities as presented in his 2019 hearing testimony. (AR 679-80).

Mr. Whitney testified he worked as a pedal-cab driver three to four days per week for

two to three hours per day; he testified that he relied on Ms. Rossi for cooking, cleaning

and grocery shopping; he testified that he talked on the phone with his friend Pat; he

described getting agitated around other people due to his pain and depression; he

testified that he no longer solicited customers due to feeling depressed; and he testified

that while on the tour with customers he was forgetful and confused. (AR 679-80).

Lastly, the ALJ considered statements from Ms. Thornton, another friend of Mr.

Whitney, that he could not interact appropriately with others due to problems controlling

his mood. (AR 685).

In reviewing the ALJ's discussion of Mr. Whitney's treatment records, hearing

testimony, and function reports, the ALJ has demonstrated in her written decision that

she considered evidence of Mr. Whitney's limitations and adequately explained how the

evidence in the record supports her RFC finding. *See Patterson*, 662 F. App'x at 639

(unpublished) (upholding the ALJ's decision because it was apparent that he considered

the claimant's work restrictions to accommodate his mental limitations). As such, the

Court concludes the ALJ complied with SSR 96-8p when crafting Mr. Whitney's RFC

assessment and reasonably rejected his treatment records, hearing testimony, and

function reports.

### c.  Inconsistency Between Step Three and the ALJ's RFC Assessment

Finally, Mr. Whitney asserts the ALJ erred in her B-criteria analysis, in that she

found Mr. Whitney had moderate limitations in social functioning and cited to Mr.

Whitney's alleged problems with authority, but failed to provide a commensurate restriction in the RFC finding. (Doc. 24 at 16).

Social Security Ruling 96-8p explains "the limitations identified in the 'paragraph B' ... criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. Thus, an ALJ's finding of moderate limitations at step three "does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). Moreover, the Tenth Circuit has upheld an ALJ's decision where her B-criteria analysis contained a limitation that was omitted from the RFC assessment. *Nixon v Barnhart*, 49 F. App'x 254, 256 (10th Cir. 2002) (unpublished). In *Nixon*, the court found the restrictions provided in the ALJ's RFC assessment adequately accounted for the limitations omitted from the B-criteria analysis. *Id.* According to the *Nixon* court, the relevant inquiry was whether the "ALJ's assessment of [the claimant's] RFC limitations is reasonably consistent with his [B-criteria] assessment." *Id.* (alterations made).

In this case, the ALJ found Mr. Whitney had a moderate limitation in the domain of interacting with others, and in the RFC assessment, she limited Mr. Whitney to occasional, superficial interactions with the public. (AR 678). This limitation—occasional, superficial interactions with the public—is reasonably consistent with a finding of moderate limitations in the domain of interacting with others. *See, e.g., Patterson,* 662 F. App'x at 639 (unpublished) (finding the ALJ's RFC assessment that limited the claimant to "simple, unskilled work involving routine, repetitive tasks" would adequately account for the ALJ's step three moderate limitation in social functioning).

Because the ALJ's B-criteria findings are reasonably consistent with her RFC assessment, the Court finds the ALJ did not err in explicitly mentioning Mr. Whitney's reports of difficulty with authority in the B-criteria analysis. *See Nixon*, 49 F. App'x at 256 (stating the relevant inquiry was whether the "ALJ's assessment of [the claimant's] RFC limitations is reasonably consistent with his PRT assessment.").

In sum, having discussed Mr. Whitney's symptoms, including those described by Ms. Rossi and Ms. Thornton, the medical evidence, his reported daily activities, and opinion evidence, the ALJ considered Mr. Whitney's ability to interact with coworkers and supervisors. Moreover, the ALJ considered Mr. Whitney's social abilities in the RFC narrative and B-criteria portions of the decision. *See Patterson*, 662 F. App'x at 639 (unpublished) ("[A]n explicit function-by-function evaluation was not required because the ALJ considered the work restrictions necessary to accommodate [the claimant's] mental limitations."). In accordance with SSR 96-8p, the ALJ provided a discussion of "evidence support[ing] [her] conclusion" that cited specific medical facts, such as Mr. Whitney's mental status examination findings, and other nonmedical evidence, like Mr. Whitney's daily activities. *See* SSR 96-8p, 1996 WL 374184, at *7. As such, the Court finds the ALJ did not err when evaluating Mr. Whitney's social limitations in the RFC assessment, as required by SSR 96-8p.

ii.    *Shoulder Impairment*

In his second function-by-function argument, Mr. Whitney argues the ALJ's RFC finding "did not address [his] limitations with respect to his ability to reach." (Doc. 24 at 17). Specifically, Mr. Whitney highlights opinions from Dr. Lammers, Dr. Holly, and Dr. Becker, who each opined Mr. Whitney had limitations in the ability to reach. *Id.* at 18.

16

Further, given that the ALJ found Mr. Whitney's shoulder impairment was non-severe based on an absence of treatment records, Mr. Whitney argues this triggered the ALJ's "duty to develop the record." *Id.* Lastly, Mr. Whitney contends the ALJ mischaracterized and misrepresented his activities. *Id.* at 19.

### a. The ALJ's Consideration of Opinions from Dr. Lammers, Dr. Holly, and Dr. Becker

Mr. Whitney first argues the ALJ erred in rejecting opinions from Dr. Lammers, Dr. Holly, and Dr. Becker, who each opined Mr. Whitney had reaching limitations. *Id.* at 18. The Commissioner asserts the ALJ considered these opinions but reasonably found their limitations were not supported by medical evidence in the record. (Doc. 28 at 13). As such, the Commissioner contends the ALJ correctly rejected Dr. Lammers, Dr. Holly, and Dr. Becker's medical opinions. *Id.* at 13.

As articulated more fully above, SSR 96-8p requires the ALJ to "explain how any material inconsistencies or ambiguities…were considered and resolved" in her RFC assessment, and for the ALJ to "consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. Here, the ALJ described findings from a December 2010 MRI of Mr. Whitney's cervical spine showing mild abnormalities, a November 2012 x-ray of his shoulder showing mild changes, and a December 2010 MRI of his shoulder revealing moderate degenerative changes. (AR 676). The ALJ noted Mr. Whitney continued to complain of shoulder pain until November 2011 at which time "there is no further notation of treatment or examinations regarding [Mr. Whitney's] right shoulder pain and only brief mentions of neck pain." (AR 676). Additionally, results from a January 2012 nerve study showed no evidence of radiculopathy. (AR 676). The ALJ reasoned Mr. Whitney's right shoulder symptoms were "no longer extensive enough that

he sought treatment. Therefore, these symptoms did not limit [Mr. Whitney's] ability to perform basic work activities and his right shoulder condition was a non-severe impairment." (AR 676).

In the RFC narrative portion, the ALJ recited Mr. Whitney's 2019 hearing testimony with respect to his right shoulder and arm symptoms. (AR 680). Mr. Whitney described pain and numbness in his right arm and fingers; he was unable to lift his arm above his shoulder; and he could not grip with his right arm. (AR 680). The ALJ did not address any treatment records or objective findings pertaining to Mr. Whitney's shoulder impairment, as there were none during the period at issue, apart from those already addressed in step two.

In her opinion analysis, the ALJ gave little weight to Dr. Becker's opinion, which included a limitation on Mr. Whitney's reaching abilities. (AR 680-681). The ALJ reasoned that Dr. Becker's opinion was inconsistent with Mr. Whitney's treatment records, other objective findings, and his daily activities. (AR 681). Similarly, state agency consultants Dr. Lammers and Dr. Holly also opined Mr. Whitney was limited in his ability to reach. (AR 684). The ALJ wrote that she found these portions of their opinions "not supported by the medical evidence" that showed Mr. Whitney's "right arm pain subsided around his alleged onset date and thereafter did not limit his ability to perform basic work activities." (AR 684). The ALJ provided valid reasons for rejecting these opinions as they relate to Mr. Whitney's reaching abilities. *See* (Doc. 24 at 17-18).

In short, as required by SSR 96-8p, the ALJ considered opinions from Dr. Lammers, Dr. Holly, and Dr. Becker, and provided valid reasons for rejecting them.

Accordingly, the ALJ's analysis of these opinions survives judicial scrutiny under SSR 96-8p.

### b.  The ALJ's Description of Mr. Whitney's Activities

Mr. Whitney challenges the ALJ's citation to his work as a pedal-cab driver as discrediting to his allegations and as misrepresentative of his actual activities. (Doc. 24 at 17, 19). Specifically, he contends the ALJ failed to fully account for his limitations in completing his activities, such as his inability to bike for more than ten minutes and help he received from Ms. Rossi in pedaling. *Id.* at 19.

The regulations require the ALJ to consider a claimant's work activity in assessing his functional ability. *See* SSR 96-8p, 1996 WL 374184, at *5 ("The RFC assessment must be based on all of the relevant evidence in the case record, such as...reports of daily activities…"). In this case, the ALJ discussed, and therefore considered, many of Mr. Whitney's alleged restrictions in his daily activities, such as his testimony that he rode his bike for ten minutes and spent most of the time "just sitting there," he relied on Ms. Rossi for cooking, cleaning, and grocery shopping, and Ms. Rossi helped him pedal his bike. (AR 679-80). The ALJ's discussion and rejection of Mr. Whitney's daily activities was adequate to support her final RFC assessment under SSR 96-8p.

Having discussed Mr. Whitney's subjective symptoms, the objective medical evidence, Mr. Whitney's treatment records and history, and conflicting opinion evidence, the ALJ demonstrated that she considered Mr. Whitney's ability to reach. Indeed, the ALJ provided a "discussion describing how the evidence support[ed]" her conclusion, including results from Mr. Whitney's diagnostic tests, his treatment history, and the

absence of shoulder pain complaints. (AR 676). *See* SSR 96-8p, 1996 WL 374184 at, *7. Additionally, the ALJ "consider[ed] and address[ed] medical source opinions" and where those opinions conflicted with her RFC assessment, she "explain[ed] why the opinion was not adopted." *See id.* at *6. In short, the ALJ discussed and considered the pertinent evidence, and based on this, the ALJ determined Mr. Whitney's shoulder impairment caused no limitations, and therefore did not necessitate a reaching limitation.

In summary, the ALJ fulfilled her obligations under SSR 96-8p because she considered evidence of Mr. Whitney's social and reaching limitations, but ultimately rejected such restrictions. Accordingly, the Court denies Mr. Whitney's request to remand on this basis.

### B.  The ALJ's Duty to Develop the Record

In his second argument for remand, Mr. Whitney alleges the ALJ breached her duty to develop the record. (Doc. 24 at 19). Specifically, Mr. Whitney argues the ALJ improperly denied his multiple requests for physical and psychological consultative examinations. *Id.* at 21. Mr. Whitney posits these consultative examinations were necessary because the evidence surrounding his shoulder impairment and ability to work with supervisors was "inconclusive." *Id.* at 22-23. Had the ALJ considered additional evidence supporting these limitations, Mr. Whitney contends the decision's outcome could have been altered. *Id.*

The Commissioner responds that the ALJ was not required to further develop the record. (Doc. 28 at 14). The Commissioner argues that ALJs have broad latitude in ordering consultative examinations. *Id.* Moreover, ALJs are only required to develop the

record when it is inadequate to make a disability determination. *Id.* In this case, the Commissioner asserts the ALJ had sufficient information to assess Mr. Whitney's particular functional limitations, and the requested consultative examinations would have produced findings irrelevant to the period at issue. *Id.* As a result, the Commissioner contends no further record development was required. *Id.* at 15.

 "In a social security disability case, the claimant bears the burden to prove her disability." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (citation omitted). However, because social security disability proceedings are nonadversarial "the ALJ is 'responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997)). "Generally, this means that the 'ALJ has the duty to…obtain [] pertinent, available medical records." *Madrid*, 447 F.3d at 790 (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1993)). It may also require that an ALJ order a consultative examination. *See Hawkins*, 113 F.3d at 1166. Yet, the ALJ has "broad latitude" in deciding whether to order a consultative exam. *Id.*

 Indeed, the ALJ is only required to further develop the record where the existing evidence is inadequate to make a disability determination. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (A consultative exam is unnecessary when the ALJ "has enough information to make a disability determination."); 20 C.FR. §§ 404.1519a (b), 404.1520b ("We may purchase a consultative examination …when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim"). As such, consultative exams "are often required" when the evidence is inconclusive,

there is a direct conflict in the evidence, or where additional tests are necessary to explain a diagnosis already in the record. *Hawkins*, 113 F.3d at 1166.

Here, Mr. Whitney requested physical and psychiatric consultative examinations both in his pre-hearing brief and at the hearing. (AR 700, 893). The ALJ denied the request at the hearing stating, "DDS [disability determination services] has told us they just can't project back you know, back to five years…and so they just told us not to send them anyway." (AR 700). Because the period at issue is September 1, 2011 through November 3, 2013, the ALJ reasoned that a consultative examination conducted in 2019, and the findings arising from it, were of little value in "projecting back" to 2013. Thus, whether the consultative examinations would help the ALJ further develop the record for the period at issue was evaluated by the ALJ and rejected. *See, e.g., Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (unpublished) ("Evidence of disability obtained after the expiration of insured status is generally of little probative value."). The ALJ had "broad latitude" in assessing Mr. Whitney's request and determining whether a consultative exam would aid in her decision-making process. *See Hawkins*, 113 F.3d at 1166.

In conclusion, the ALJ determined the existing evidence in the record was adequate to make a disability determination. *See Cowan*, 552 F.3d at 1187 (A consultative exam is unnecessary when the ALJ "has enough information to make a disability determination."). Moreover, any additional evidence arising from Mr. Whitney's requested consultative examinations would have provided little probative value in assessing his limitations for the relevant time period six years prior. Accordingly, the Court denies Mr. Whitney's request for remand on this basis.

## V.    Conclusion

For the foregoing reasons, the Court finds the ALJ did not commit harmful error in her RFC function-by-function assessment. Additionally, the ALJ did not err in denying Mr. Whitney's request for consultative examinations.

**IT IS THEREFORE ORDERED** that Mr. Whitney's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 24), is **DENIED** and this case is **DISMISSED** with prejudice.

**IT IS SO ORDERED**.

_____

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE